This case has two issues. I'm going to focus primarily on the search issue. I think the other issue is a rather unique issue. We can come back to it if the court wants to talk about it, wants me to talk about it further. With regard to the search issue, I want to be clear, because between the time that the brief was filed and today, obviously there was a fairly significant development in the Supreme Court's decision in Davis. So I want to be absolutely clear that what I'm arguing today is that the search that led to the discovery of the So in other words, the issue of Davis, I'm accepting as decided law. If, in fact, this case was based on Gant, I would agree that it would fall under Davis and would not be an issue. In that regard — The idea that, first of all, he was at a residence where they suspected drug trafficking. He contributed to a growing suspicion after the stop that the truck may have contraband. And is that considering all of these factors? If you just considered the stop, I think you come up with a different conclusion than to consider all of the factors, the fellow that lunged, the attitude, the nervousness and so forth. When you put all those together, isn't it possible that that makes a difference? Your Honor, I actually think it makes a difference in justifying why the search was impermissible. Because if you look at the evidentiary hearing and you look at the officer's justifications for it, the officer clearly recognized that he did not have probable cause based on the fact that Santos was driving away from the residence to stop him. That's why, and I'm not arguing here whether or not what was clearly a pretextual stop for going over the line was an issue. I think that what happened in this case was there's no question the officer was looking for a reason to stop Mr. Santos, but that was not probable cause. There's also not disputed that the arrest, as pretextual as it was, was permissible. The issue, and I think here in ironically the respondent's brief focused our attention on this by citing to Weaver, because the only issue in this case, and admittedly these are very unusual circumstances, the fact that you have one officer make a stop, leave the scene, not give any instructions to the other officer to do a search, 35 to 40 minutes later call back and say, oh, by the way, complete the search that I was conducting. So those are very unusual circumstances. And what I think we get from the three cases that dealt with this issue, that interpreted Belton's substantial contemporaneousness standard, were McLaughlin, Vasey, and then Weaver, which was the final case. Those three cases altogether stand for the principle that a search incident to arrest is justified only if there is not a substantial break in time or intervening circumstances. In this case, we have a break in time that is greater than the break in time that occurred in Vasey, far more substantial than the break in time that occurred in Weaver. But more importantly, we have incredible intervening circumstances. We have the fact one officer makes the stop, leaves with no instruction, after he's taken both of the suspects out of the car. The other officer takes charge of the scene, does not begin to initiate a search, shows no intention of initiating a search, and then at that point in time, in fact, he concludes that the suspects are so nonthreatening that he takes their handcuffs off. They're still outside, away from the car. Well, the problem with your argument that I see is that there was a hearing in this case, and the district court heard all this information and evidence that you're telling about and made a particular finding that Murphy was credible. And Murphy said he noticed the defendant's hands were visibly shaking. The defendant was twisting his head around. And then the lunge in the back seat. So we accept all of that as fact. And the court concluded on that basis that there was probable cause to believe that the car contained contraband, weapon, or whatever. And the district court bought those historical facts. So don't we operate off of those? We're an appellate court. We're not retrying the case. I understand that. I would beg to disagree with the court on what the district court's findings were. District court did find that Officer Murphy was credible. Right. First, though, I would argue that the district court actually made an error of law in terms of its decision having to do with the link, the relationship between Murphy's initial stop and the second search. I don't think that the district court applied the standards that's clearly laid out in Weaver and in McLaughlin and in Vasey. So your argument is even if Murphy had probable cause to search the car, something fell apart or happened, he didn't do the search, what was missing? Well, first place, I'm not sure that I read the district court's findings as saying that there was probable cause. In fact, I think the district court's specific finding was to find that Murphy's search was a search incident to arrest based on what I think and argued in my initial brief was a misinterpretation of the standard and GAN. But I don't think that the district court ever addressed the issue. It at one point said it was a continuous search. Well, I read the case law. I don't see that in the case law. I see the case law that actually Respondent has relied on with Weaver. And I think that's a very important point. The Respondent correctly pointed us to the case law that applies in this situation. But the other fact that I think is crucial, which says something about the district court's findings, which also we obviously have to come to, is the question of inevitable discovery. If, in fact, the district court had found that it was a search based on probable cause and it had made that kind of a clear finding, then the district court would have had no reason to ever go to the doctrine of inevitable discovery. District courts do that all the time. They belt and suspenders. They thrash around. They pick this. They pick that. They pick something else. I understand, Your Honor, but I respectfully suggest that a close reading of the district court's opinion shows that regardless of whether Murphy was credible, and notice in my brief I have never, even though I think there are all sorts of problems with Murphy's initial stop and at the evidentiary hearing there were substantial arguments about Murphy's stop, I haven't argued that. I think that the law is clear that, one, you're right, the appellate court is going to defer to the factual findings on Murphy's credibility, and, two, I think that the law does allow a lot of the things that Murphy did, even though we in the defense bar might wish that it was different, which is why I focus specifically on the question of Warner's search, which is — was clearly in violation of the standards in Weaver-Vasey. The separation in time is an unusual circumstance, and that's acknowledged. But the factors that invited the search, if I've read the facts correctly, first of all was the nervousness. And it was described as pretty obvious. And then the fact that the defendant had been to a residence that was suspect, that the passenger made a quick move, they were afraid perhaps he was after a gun or something. And all of those things occurred at the initial search. And that isn't enough, you think. Well, I think not only is it not enough, I think the intervening circumstances establish that it's not enough. That it wasn't enough. First, just to be clear, and once again, my reading of the district court's opinion is the district court justified the initial search in sort of classic search incident to arrest term. Well, I don't know how you can say that, because on page 35 of the excerpt, I'll quote you this, the court finds Officer Murphy's testimony credible, namely that he had probable cause to initiate a search of the vehicle. He doesn't say conduct a search incident to arrest. He said he said probable cause to initiate a search of the vehicle. Your Honor, I would suggest two things. I think if you read the entire opinion, and I did in my brief allude to this specifically, what the court focused on was the lunge, the nervousness in the lunge. I have questions about the nervousness. Murphy stated in his declaration that several factors formed the basis of his decision to search the vehicle, alarmed by the unusual level of nervousness, feared for his safety, observed the passenger in the vehicle making a lunging motion towards the area of the driver's seat. You know, I have to tell you, speaking for myself, you're not convincing me that this wasn't a case of probable cause to search the vehicle. Let's separate out the question of probable cause based on drugs versus probable cause based on a weapon. Why would you try to separate those? He didn't know at the time. No, Your Honor, because I don't think he had probable cause based on drugs. He had probable cause based on the lunge. The nervousness question, I quote the district court, I think there's a question about whether nervousness in and of itself. But the most important question, though, is let's take, and I'm not challenging that Murphy had that, had basis to initiate the search at that time. I think all that justified was a search a la long based on the threat that there was in fact a gun in the back seat of the car. So what you don't like is that Warner conducted the actual search? What I don't, I don't want to say what I don't like, but what I think the court can't ignore is that if in fact Murphy was, thought that was the case, why didn't he instruct Warner to continue the search at the time? He leaves the scene. Well, the court heard all of this and said that this was a continuation of the entire process. That was the conclusion to which the court came. And it looks on the facts that that's supported by the factual information in the judge's possession. Well, Your Honor, I think the standard to come back to McLaughlin Weaver. You're telling us that nobody other than Murphy could have conducted that search. To have it done by anybody else rendered it unreasonable. No. That's not what I'm saying at all. I'm saying if Murphy gives instructions to Warner, I think there's a basis to believe, there's probable cause to believe there's a gun. If Murphy says that to Warner and Warner conducts the search, and even if, as in the case of Weaver, there is some reason why Murphy or Warner delays conducting that search, then I think it's entirely permissible. But what we have here is the facts of the case undercut the credibility of the connection between the Murphy search, not the credibility, undercut the link. Well, I'll read you again then from page 36, factually, that he had not yet completed the initial search at the time he was called away. Although Murphy did not instruct Warner as to the specific areas that remained to be searched, factually, he did communicate to Warner that his initial search had not yet been completed, close quotes, or finished. This shows Officer Warner's search was a continuation of Officer Murphy's search. Factually, what's wrong with that? First place, that communication from Murphy to Warner did not occur at the scene. It occurred 35 to 40 minutes after. What difference does that make? It was communicated. Because I think that if I'm a police officer and I think there's a gun in a car and I am concerned about it and I turn over a suspect to another officer and that officer then is so unalarmed and has so little information about the threat that he proceeds to take the handcuffs off of the suspect, I mean, that in and of itself, as I say, this is a very unusual set of circumstances. They're out of the car at this point, aren't they? They're out of the car. They're away from the car. But nevertheless, if you think, I think most police officers, if they were seriously concerned, as Murphy suggests, would not have, would have said something to Warner. So what does that mean? Let's assume you're right. This was, you know, a very unprofessional police work. What does it mean if Murphy did in fact have probable cause to search the car and he told Warner that he hadn't yet completed it or finished it, yet you do it? First place, I don't think that it is probable cause to search based on a crime. I think it is probable cause within the context of Long. And I think that the district court's opinion is making it clear. It's explaining it in terms of Belton Long. It's not explaining in terms of probable cause that there's a weapon in the car. I think that would have required much more. Let me now, I think I'm out of reserve. Your time is up. Thank you very much. Thanks. May it please the Court. My name is Ann Voights and I represent the government. I'd like to begin by apologizing for being somewhat late and thank the Court and defense counsel and the Court staff for their assistance. If you've been eating a sandwich or drinking coffee someplace, it might make a difference, but we're fine. You're getting a good workout today. I am. If I might first address the issue that Defendant raised claiming that the Court did not find probable cause, just to follow up on that. In fact, in footnote 16 on the page that Judge Trott cited to you, the Court specifically said Gantt is an apposite because it dealt solely with the scope of a search incident to arrest. And I think it makes it clear that the Court's finding there was one of probable cause and not of a search incident to arrest. But we would submit that this search is justifiable on a number of grounds. First is a search incident to arrest under the pre-Gantt case law. Second, under probable cause as the district court found. And third, as the district court also found, pursuant to inevitable discovery through an inventory search. And if I might begin by addressing. In that it was prior to the Gantt case makes the difference, significant difference in your judgment. Yes. Under Davis it's clear that because the search occurred prior to Gantt, we analyze it under the law that was in effect at that time. The district court did not have the benefit of Davis. And so when defense counsel says that the Court didn't apply Weaver and Vasey, that's because the Court was trying to follow what was then the law in this circuit, which is that Gantt did apply retroactively. What the Court did do was the Court found that this was a reasonable continuation and we'd submit that this is a factual determination that should be reviewed for clear error. And that it's essentially analogous to the issue of whether the search was roughly contemporaneous. In this case, what happened was once Officer Murphy had begun his search, they called, well, they were calling for backup. They waited for backup. He's carrying out the search and he's getting multiple calls saying, we need you at this house. We're executing the search warrant. We need you to come. And this is what the district court found. He found Officer Murphy credible on this point, credible in general. And he said that when he went, he then realized that he hadn't completed the search. He called back and that's when Officer Warner then completed the search and found the laptop containing the drugs and the guns. Submit under the circumstances that meets the requirements for roughly contemporaneous, that there was not such intervening act as to make the search distinct from the arrest in this case. With respect to the probable cause issue, if I might simply note that in addition to the nervousness, which the court found was unusual, Officer Murphy was very specific about the bodily motions that led him to think that the defendant was nervous. And he was also very specific about a lunge, which the court found was significant enough that Officer Murphy drew his gun because he believed that the passenger was reaching for a weapon. But in addition to that, we think this court can also consider the fact that here they'd already conducted a frisk of defendant and had turned up money, large bundles of money in his pockets. The fact that the car was coming from a house where they were going to execute a search warrant related to drug trafficking, that all of those are facts that this Court can consider in determining whether the district court erred in finding that there was probable cause. If this Court has no further questions, I think the government would be happy to submit on the record. Thank you, Your Honors. All right. Counsel, would you like to rebut for a minute? Not necessary, but if you'd like to, we'll give you an extra minute. Thank you, Your Honor. I'd like to go to what I think has obviously been identified by the Court as the most critical issue and is identified by Respondent as footnote 16. Respondent is absolutely right. The footnote in which the Court addressed the issue that Your Honor raised is footnote 16. And in footnote 16, I discussed that at length in my opening brief on pages 23 to 25. Footnote 13 refers to Ross. As I pointed out in my brief. You're going back to 13 now, did you say? Footnote 16, I'm sorry. I'm sorry. I thought you said 13. Sorry. I've drawn back to the number 13. 16. In that footnote, I think if you read, I identify very clearly in my brief the fact that that is an unexplained footnote. The only context in which you read Ross that it makes sense is if you read it in the context of Long and Belton. My time has now expired, but I think that if you look at that closely, you will find that the Court was not, should have at that point in time looked to the law in Weaver, looked to the law having to do with the issues that the Respondent correctly identifies as the state of the law in this circuit prior to Gantt. And if the Court had done that, it would have found that it erred as a matter of law. Therefore, the issue is a matter of law. What did Gantt hold? Gantt basically holds that you can't conduct a search incident to arrest. Right. Incident to arrest. Incident to arrest. The difference between Gantt and law prior to Gantt was that any time you had a search, you could conduct a as long as the state of the law. Gantt left untouched the idea that you can search a vehicle under these circumstances if you have probable cause to search the vehicle. He left untouched essentially Long. Right. And the law in Long. The law in Long and Belton, those all were based on the substantial contemporaneousness of the law, the substantial standard, that just because you have the ability to search a vehicle based on what circumstances that occur at the time of the arrest, that doesn't give you a permanent right. In closing, I'd like to just make one very important reason why I think this case is so important. Davis identified the issue as good faith. This is a case in which if the Court finds that the search in this case was justified and finds that the inevitable discovery would have allowed it to go, I quite frankly suggest it would basically eviscerate any limit on automobile searches. We've already narrowed that limit. You mean we have the power to trash the Fourteenth Amendment? I think that the impact of that decision in this case based on these facts would set a precedent that would do that. I respectfully suggest that. Thank you, Your Honor. Okay. All right. Thank you very much for your whole argument. And the case of U.S. v. Santos will be submitted and the Court will stand adjourned until 2 o'clock this afternoon. Thank you very much.
judges: George, Trott, Bea